UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EXECUTIVE MANAGEMENT SERVICES, INC., | ) | |
| EMS FLORIDA, INC., | ) | |
| D&B VENTURES, LLC, | ) | |
| AIR GULF II, LLC, | ) | No. 1:13-cv-00582-WTL-MJD |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FIFTH THIRD BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFFS' MOTION TO COMPEL

This matter comes before the Court on Plaintiffs' Motion to Compel. [Dkt. 126.] For the

following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion.

### I.     Background

On April 8, 2013, Executive Management Services, EMS Florida, D&B Ventures, and

Air Gulf II ("EMS" or "Plaintiffs") filed suit against Fifth Third Bank ("Defendant" or "Fifth

Third"), alleging, *inter alia*, 1) breach of the implied duty of good faith and fair dealing; and 2)

breach of fiduciary duty. [*See* Dkt. 1; *see also* Dkt. 127 at 1.]

The claims arose from a series of transactions beginning in September 2004, when EMS

entered into a trust indenture in which The Bank of New York Mellon ("BNYM") was

authorized to issue up to ten million dollars in variable rate demand notes ("VRDNs") to EMS.

[Dkt. 74 at 2.] Fifth Third issued a letter of credit as security for the bonds, [Dkt. 1 at 4; Dkt. 74

at 2], which carried a variable interest rate periodically calculated by Fifth Third's affiliate, Fifth Third Securities. [Dkt. 1 at 4.]

EMS became dissatisfied with the variable structure of the debt. [*Id.* at 5.] In 2006, however, Fifth Third allegedly approached EMS and recommended "interest rate swaps as a mechanism for EMS to hedge against interest rate volatility." [*Id.* at 6.] In such "swaps," the parties select a "notional amount." One party then agrees to pay a fixed rate of interest on that amount to the other, while the second party agrees to pay a floating interest rate derived from a well-recognized index such as a London Interbank Offered Rate ("LIBOR"). At the end of each period in the swap agreement, the parties calculate the difference between the fixed and floating rates. If the floating rate exceeds the fixed rate, then the party who agreed to pay the floating rate pays the difference between the rates, and vice versa. This allows the first party to "swap" its variable rate for a fixed payment. [Dkt. 1 at 5; Dkt. 74 at 2 n.1.]

EMS alleges that Fifth Third made potentially misleading representations to EMS about interest-rate swaps. [Dkt. 1 at 6.] The parties then allegedly entered swap agreements in which EMS would pay Fifth Third a fixed rate of interest, while Fifth Third would pay EMS the LIBOR Tolerate 3750 rate of interest. [*Id.*]

The LIBOR rate, however, fell sharply during the 2008 economic recession. [Dkt. 1 at 10; Dkt. 74 at 3.] EMS alleges that various banks manipulated LIBOR to "keep it artificially low" and alleges that to the extent Fifth Third knew of such manipulation, Fifth Third should have disclosed the information to EMS. [Dkt. 1 at 10.] EMS further alleges that as the LIBOR rate fell, EMS paid much more than anticipated under the swap agreements. [*Id.* at 11.] EMS states that it requested information about the swap agreements during this time, but alleges that instead of providing information, Fifth Third unilaterally terminated the swap agreements. [Dkt.

1 at 12.] EMS claims this termination costs it hundreds of thousands of dollars in early termination fees, which it paid in 2011. [*Id.*]

EMS then filed the current lawsuit. Defendant moved for judgment on the pleadings on August 23, 2013. [Dkt. 37.] The Court granted that motion in part, [Dkt. 74], leaving only Plaintiffs' claims for 1) breach of the duty of good faith and fair dealing; and 2) breach of fiduciary duty. [*Id.* at 8-14.] These claims were based on Fifth Third's alleged termination of the swap agreement and alleged failure to disclose a wide range of internal information, such as the risk associated with using the LIBOR rate defined in the agreement and the risk of EMS's liability for early termination fees. [Dkt. 1 at 7.]

While the motion for judgment on the pleadings was pending, discovery commenced, and on November 27, 2013, EMS served on Fifth Third its First Set of Interrogatories and its First Request for Production. [Dkt. 127 at 3.] On June 10, 2014, EMS served its Second Request for Production. [*Id.* at 4.] Fifth Third objected to most of these requests and interrogatories with the same rote objection contending the requests were "overly broad," "unduly burdensome," and "not relevant to the subject matter of this action." [*See* Dkts. 128-1, 128-2 & 128-3.]

On May 13, 2014, Plaintiffs' counsel sent to Defendant's counsel a proposed Rule 30(b)(6) deposition notice with a list of topics for Fifth Third's Rule 30(b)(6) representative. [Dkt. 127 at 4.] On June 4, 2014, Fifth Third's counsel objected to and requested clarification of the proposed topics. [*Id.*] EMS responded by letter on June 25, 2014, but never served a notice of deposition on Fifth Third. [*Id.*; *see also* Dkt. 128-5.]

On June 10, 2014, EMS served Fifth Third's liability expert, John D. Van Slooten, with a Subpoena and Non-Party Request for Documents. [Dkt. 127 at 4.] EMS received a response on June 26, but believed the response was incomplete. [*Id.* at 4.]

The parties conferred among themselves, and with the Magistrate Judge on August 4, 2014, but could not resolve the disputes resulting from Defendant's responses. [Dkt. 127 at 4.] The Court then authorized Plaintiffs to file a motion to compel if necessary. [Dkt. 118.] Following the August 4 conference, Fifth Third produced several hundred pages of documents, but this production did not remedy Plaintiffs' concerns. [Dkt. 127 at 4-5.] Plaintiffs thus filed the current motion to compel on October 13, 2014. [Dkt. 126.]

Plaintiffs' motion asks the Court to compel production responsive to Request Nos. 3-9, 11-17, 19-20, 25-29, and 45 of Plaintiffs' First Request for Production; Request Nos. 1, 2, 5, and 7 of Plaintiffs' Second Request for Production; and Interrogatory No. 2 of Plaintiffs' First Set of Interrogatories. [*See* Dkt 127.] Plaintiffs' motion also asks for an order compelling Fifth Third to 1) comply with its obligations regarding destroyed documents [Dkt. 127 at 17]; 2) comply with the 30(b)(6) deposition in the form EMS proposed; and 3) produce all documents responsive to Plaintiffs' Subpoena and Non-Party Request served on John Van Slooten. [Dkt. 127 at 19.]

The Court conducted a hearing on October 30, 2014. During the hearing, Defendant withdrew its objections to Requests Nos. 7-9, 11, 13, 14, 17, 20, and 25-28 of Plaintiffs' First Request for Production and Requests Nos. 1, 2, and 5 of Plaintiffs' Second Request for Production, and those objections are hereby ordered to be **WITHDRAWN**. Plaintiffs withdrew from their motion Request No. 7 of their Second Request for Production and their request for an order compelling Defendant to comply with obligations regarding destroyed documents.

## II.      Legal Standard

Under Rule 26, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence, and relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (citations omitted); *accord Med. Assur. Co. v. Weinberger*, 295 F.R.D. 176, 181 (N.D. Ind. 2013) (citing Fed. R. Civ. P. 26(b)(1) and defining material as "relevant to the claim or defense of any party" if the material "bears on" or "reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case").

Rule 37(a) allows a party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). In ruling on such motions, courts have "broad discretion" and have "consistently adopted a liberal interpretation of the discovery rules" in order to "aid the search for truth." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). The scope of discovery, however, has limits, and a court may deny a motion to compel to "protect a party from oppression or undue burden." *Chavez*, 206 F.R.D. at 619.

The party resisting a motion to compel bears the burden to show why a particular discovery request is improper. *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). "The objecting party must show with specificity that the request is improper." *Id.* "[G]eneral assertions" of hardship will not suffice, *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990), nor will "reflexive invocation" of the "often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or [irrelevant.]" *Cunningham*, 255 F.R.D. at 478 (citation omitted).

### III.    Discussion

Defendant objects to each of Plaintiffs' remaining requests and interrogatories at issue in this motion on the grounds that they are "not relevant to the subject matter of this action," are

"unduly burdensome," and are "overly broad." Defendant elaborates on each these three objections in its response to Plaintiffs' motion. The Court will address Defendant's general arguments and then rule on each of Plaintiffs' remaining requests.

## A. Relevance of Requested Information

Throughout its brief, Defendant argues that transactions and information unrelated to EMS are irrelevant to the current action. [*See, e.g.*, Dkt. 134 at 9-12.] Defendant asserts that because the only remaining claims in this case are for breach of the implied duty of good faith and fair dealing and breach of fiduciary duty, the "only relevant inquiry is whether Plaintiffs . . . reposed some unusual degree of trust in Fifth Third, or whether Fifth Third assumed some unusual control over Plaintiffs' business." [*Id.*] Thus, Defendant hopes to limit discovery to "<u>its dealings with Plaintiffs</u>," [*id.* at 10 (emphasis original)], and asserts that requests seeking information about other interest rate swaps, other variable rate bonds, or the 2008 recession in general are not relevant. [*Id.* at 11.]

Plaintiffs, in contrast, argue that all information it has requested—even that unrelated to the transactions specifically between EMS and Fifth Third—is relevant. [Dkt. 136 at 1.] Plaintiffs argue that Defendant is improperly trying to limit discovery to the single issue *Defendant* plans to explore at trial, while denying Plaintiffs the opportunity to collect information *they* will need to prove their case. [*Id.* at 5.]

Plaintiffs' first remaining claim is for breach of the implied duty of good faith and fair dealing. [*See id.* at 4.] Under New York law, which governs this case, [Dkt. 134 at 9], such a duty arises "where 1) a party has superior knowledge of certain information; 2) that information is not readily available to the other party; and 3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Procter & Gamble Co. v. Bankers Trust Co.*, 925 F.

Supp. 1270, 1290 (S.D. Ohio 1996) (citing *Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d 146 (2d Cir.1995)).

Based on this explanation of the duty of good faith and fair dealing, transactions and information unrelated to EMS are plainly relevant. EMS, for instance, has requested all documents relating to "Fifth Third's marketing of interest rate swap agreements as a means to hedge variable interest rate risk," including internal information relating to use of LIBOR as a hedging mechanism. [Dkt. 128-1 at 3.] This request does not relate specifically to Fifth Third's dealings with EMS, but Fifth Third's internal knowledge of interest rate swaps and LIBOR are relevant to whether it had "superior knowledge," *Proctor & Gamble*, 925 F. Supp. at 1290, of the subject matter of the transactions with EMS.

Likewise, Plaintiffs have requested all "documents relating to Fifth Third's recommendation of LIBOR as a hedging mechanism," including internal research, memoranda, and communications on the topic. [Dkt. 128-1 at 3.] Again, this request is not limited to Fifth Third's recommendations specifically to Plaintiffs, but internal memoranda describing Fifth Third's understanding of interest rate swaps and LIBOR could demonstrate Fifth Third's "superior knowledge." Hence, even without a connection to the particular transactions with EMS, the information EMS requests could help establish Fifth Third's duty of good faith and fair dealing. It could therefore "bear on" an "issue that is or may be in the case," and is relevant. *Chavez*, 206 F.R.D. at 619.

A similar analysis holds true for Plaintiffs' second remaining claim: breach of fiduciary duty. Defendant argues that a fiduciary relationship between a bank and customer arises only when there is an unusual degree of confidence reposed in the bank or when the bank assumes an unusual degree of control over the customer. [Dkt. 134 at 9.] Thus, Defendant would limit

discovery to those transactions between EMS and Fifth Third that demonstrate such control or confidence. [*Id.* at 9-10.]

This argument is unavailing. First, Defendant has attempted to limit the issue to the existence of a fiduciary duty, but to prevail on their claim, Plaintiffs must prove not only the existence of the duty, but also breach, causation, and damages. *See In re Parmalat Sec. Litig.*, 684 F. Supp. 2d 453, 475 (S.D.N.Y. 2010). A breach may occur if the fiduciary did not comply with his obligation "to make full disclosure of all material facts." *Id.* Thus, Fifth Third's knowledge of the risks associated with interest rate swaps and the use of LIBOR in such swaps is relevant to Plaintiffs' claim: indeed, evidence demonstrating that Fifth Third had a broader knowledge about risks related to interest rate swaps and LIBOR that it failed to disclose to EMS could *prove* Plaintiffs' claim by showing a breach of Fifth Third's duty to *disclose* that information *to* EMS.

Second, Plaintiffs cite case law in which courts have recognized a fiduciary duty arising when "confidence is reposed on one side and there is resulting superiority and influence on the other." [Dkt. 136 at 3 (quoting *Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of New York*, No. 06-CV-1164, 2010 WL 3907489, at *10 (N.D.N.Y. Sept. 30, 2010).] The requirement of "superiority" makes Plaintiffs' requests relevant: the more knowledge that Plaintiffs can demonstrate on the part of Fifth Third—by, for instance, citing Fifth Third's internal memoranda on interest rate swaps and LIBOR [*see* Dkt 128-1 (Plaintiffs' Requests Nos. 5 and 6)]—the more likely it is that Plaintiffs will be able to establish that Fifth Third was in a superior position that could give rise to a fiduciary duty. *See, e.g., Roni LLC v. Arfa*, 963 N.E.2d 123, 125 (N.Y. 2011) (finding fiduciary relationship in part because plaintiffs had "little or limited knowledge" of transactions' subject matter).

For these reasons, then, Defendant's assertion of irrelevance rings hollow. Defendant may claim that the litigation focuses "on the contracts and relationship between the parties," [Dkt. 134 at 13], but information going beyond the transactions between EMS and Fifth Third will shed light on the nature of that relationship and whether Fifth Third breached any duties associated with that relationship.

Defendant also raises relevance objections specifically directed at Plaintiffs' requests for regulatory filings and documents related to other lawsuits. [Dkt. 134 at 16-17.]

Plaintiffs' request No. 29 asks for all "Fifth Third filings, statements or other communications with the U.S. Securities and Exchange Commission, the Commodity Futures Trading Commission, or any other governmental agency, in the past 10 years, relating to interest rate swaps as a means to hedge against variable interest rate risk." [Dkt. 128-1 at 13.] Defendant argues that Plaintiffs "have made no showing how these filings, which are mostly public, are relevant to their claims in this litigation." [Dkt. 134 at 16.]

In their reply brief, however, Plaintiffs note that such filings and communications "could reveal what Fifth Third knew and was telling other parties, but failed to disclose to EMS, despite its obligation to do so." [Dkt. 136 at 7.] As noted above, Fifth Third's knowledge and disclosures are relevant to the alleged existence and breach of a fiduciary duty, such that the filings and communications Plaintiffs seek are relevant to their claims. Additionally, Plaintiffs explained that they had uncovered documents in which Fifth Third took a position during rulemaking proceedings before the CFTC that may have conflicted with its position regarding statements made to Plaintiffs during the negotiation of the Plaintiffs' swap agreements. [Motion to Compel Hr'g, Oct. 30, 2014, at 1:52.] This strengthens Plaintiffs' claim that the documents they seek may be relevant.

Further, because this material appears relevant, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Chavez*, 206 F.R.D. at 619. Defendant's only contention that the requested discovery is harmful is a vague allegation that the request is "overly broad" and "unduly burdensome," [Dkt. 134 at 16], and as explained below, such generalized allegations will not suffice to resist a motion to compel.

Plaintiffs' request No. 45 then asks for "[a]ll documents identifying, describing or otherwise relating to any complaints, lawsuits, threatened lawsuits, claims, investigations, administrative or other proceedings filed or asserted against Fifth Third, from 2003 to the present, involving allegations relating to interest swap transactions." [Dkt. 128-1 at 19.] Defendant argues that this request is "not limited to the issues in this case," [Dkt. 134 at 17], but again, this argument relies on the faulty proposition that only the transactions between EMS and Fifth Third are relevant. As explained above, Fifth Third's knowledge of interest rate swap transactions in general is relevant to whether Fifth Third had superior knowledge compared to EMS and whether Fifth Third disclosed all material facts related to its transactions with EMS. Because other lawsuits or filings could demonstrate such knowledge, *see, e.g.*, *Schaap*, 130 F.R.D. at 389, Plaintiffs' request does seek relevant information.

**B. Burden of Producing Information**

Fifth Third argues that locating "all documents responsive to Plaintiffs' requests would be a tremendous and unduly burdensome undertaking." [Dkt. 134 at 14.] It states it has thirty custodians on litigations hold, who currently have over 130 GB of compressed data, an amount equivalent to 7,800,000 pages of email. [*Id.* at 14-15.] It also asserts that it has already

"expended significant resources to collect, search, review, and produce" documents, and that locating all documents related to interest rate swaps, VRDNs, LIBOR, and the 2008 recession would be "stupendously burdensome." [*Id.*]

As noted above, the party resisting a motion to compel must "show with specificity" that the request is overly burdensome. *Cunningham*, 255 F.R.D. at 478. It must "adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome." *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, No. 1:04-CV-477, 2007 WL 1164970, at *4 (N.D. Ind. Apr. 18, 2007) (internal quotations omitted).

Defendant's claims in this case are insufficient to meet its burden. First, Defendant's generalized claim that is has already "expended significant resources" in discovery is entitled to little if any weight. *See, e.g.*, *Schaap*, 130 F.R.D. at 387 (noting that the "mere fact that [a party] will be required to expend a considerable amount of time, effort, or expense" does not preclude discovery); *see also Melendez v. Greiner*, No. 01 Civ.07888 SAS DF, 2003 WL 22434101, at *4 (S.D.N.Y. Oct. 23, 2003) ("[C]onclusory assertion of burdensomeness is entitled to no weight whatsoever.").

Likewise, Fifth Third's assertions that complying with Plaintiffs' requests would be an "enormous undertaking" or would be "stupendously burdensome" are not specific enough to preclude discovery. Defendant's contentions would have more force if it had provided an estimate of the cost or hours involved in searching, compiling, and producing the requested information. *See, e.g.*, *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, No. 1:04-CV-477, 2007 WL 1164970, at *4 (N.D. Ind. Apr. 18, 2007) (denying discovery on basis of affidavits demonstrating number of hours required to conduct search). Defendant, however,

provided no affidavits or other evidence describing the monetary cost or time required to comply with Plaintiffs' requests; consequently it has not carried its burden. *See, e.g., Boyer v. Gildea*, No. 1:05-CV-129, 2008 WL 4911267, at *5 (N.D. Ind. Nov. 13, 2008) (granting motion to compel where resisting party did not establish "the amount of time" or "the cost of producing" the documents); *Schaap*, 130 F.R.D. at 387 (requiring "affidavit or some other evidence" to support objection to motion to compel).

The closest Fifth Third comes to meeting its burden is a description of the number of hits for various search terms in the 130 GB of data held by its litigation custodians. Search terms such as "interest rate swap" and "LIBOR" resulted in hits in 33,996 and 104,195 documents.[1] [Dkt. 134 at 15.] But there the analysis ends: Fifth Third does not explain how long it would take to review, collect, and produce the documents, nor does Fifth Third even hint at how much such an undertaking would cost. [*Id.*]

The Court is mindful that searching and producing electronic information can be burdensome. In *Thermal Design, Inc. v. Guardian Bldg. Products, Inc.*, for instance, the court denied discovery when the plaintiff asked the defendants to search "all archived e-mail accounts and shared network drives without any restriction as to custodian or individual." No. 08-C-828, 2011 WL 1527025, at *1 (E.D. Wis. Apr. 20, 2011). There, however, defendants presented evidence showing that such a search would cost $1.9 million dollars and take several months, with an additional $600,000 and thirteen weeks to review the compiled information. *Id.* Defendant in this case has provided no such estimate. Moreover, the court in *Thermal Design* denied the discovery only *after* defendants had *already* produced 91 GB and 1.46 million pages

---

[1] At the hearing, Plaintiffs also explained that the searches Fifth Third performed were broader than the sort of production Plaintiffs actually requested, [*see, e.g.*, Hr'g at 3:40], further reducing the impact of Defendant's attempt to demonstrate the burden of production.

of electronically stored information, at a total cost of $600,000 and seven months of effort. *Id.* Defendant in this case claims that it, too, has already "expended significant resources," but Defendant provides no specifics. Without such a particular explanation of the costs of the requested discovery, Defendant has simply failed to "show with specificity" that Plaintiffs' request are overly burdensome. *Cunningham*, 255 F.R.D. at 478. [2]

### C. Breadth of Requests for Production

Defendant argues that many of Plaintiffs' requests are overbroad because they ask for information that does not relate to the Plaintiff, and because they are often "unlimited in time and scope." [Dkt. 134 at 14.] For the reasons previously explained regarding the relevance of Plaintiffs' requests, it is not sufficient for Defendant to supply only information related specifically to Plaintiff. Defendant's general information about interest-rate swaps, the risks associated with interest rate hedging, and other matters could be relevant to both the existence and breach of a fiduciary duty or a duty to deal in good faith, such that requests encompassing information beyond that related specifically to the Plaintiffs are not necessarily overly broad.

Defendant's remaining contention regarding the "unlimited" scope of the requests carries more force, but during the hearing, Plaintiffs agreed to limit many of their requests, and the Court will address those limitations below when ruling on the individual requests.

The single request that Plaintiffs could not agree to limit was Request No. 29, seeking all "Fifth Third filings, statements or other communications with the U.S. Securities and Exchange

---

[2] The *Thermal Design* court also stated that discovery should be proportionate to the circumstances of the case, 2011 WL 1527025 at *1 (citing Fed R. Civ. P. 26(b)(2)(C)), a theme that Defendant emphasized at the hearing. [*E.g.*, Hr'g at 1:57, 2:22.] Defendant then asserted that Plaintiffs' claims in this case are worth no more than two million dollars in damages, making extensive discovery disproportionate to the circumstances of this lawsuit. [*See* Hr'g at 3:52.] However, Defendant's failure to provide *any* cost estimate for compliance with Plaintiffs' motion to compel makes it difficult for the Court to determine what amount of discovery would be appropriately proportionate to this claimed maximum amount of damages. In any case, the Court's narrowing alterations to Plaintiffs' requests for production, as described below, will address the judicial preference for proportionate discovery.

Commission, the Commodity Futures Trading Commission, or any other governmental agency, in the past 10 years, relating to interest rate swaps as a means to hedge against variable interest rate risk." [Dkt. 128-1 at 13.] As described above, much of this information may be relevant to Plaintiffs' claims, but this request is facially overbroad, both temporally and in the scope of material covered. Plaintiffs conceded at the hearing that the request as written sweeps in all manner of routine regulatory filings, quarterly reports, annual reports, and other materials that may mention interest-rate swaps but that have no bearing on this litigation whatsoever. [Hr'g at 4:09.] Indeed, Plaintiffs explained that they have no interest in such material. [*Id.*] Because Plaintiffs themselves concede the overbreadth of their request, the Court will sustain this objection and **DENY** Plaintiffs' motion to the extent that it seeks an order compelling production responsive to this request. Plaintiffs, however, may serve a request for similar information at a later time, provided they can craft a narrower, more specific request.

### D. Plaintiffs' First Request for Production

### a) Request 3

Plaintiffs' Request No. 3 asks for "[a]ll documents relating to the procurement of corporate debt from BNYM referenced in paragraphs 15 through 20 of Plaintiffs' Complaint, including but not limited to all communications between Fifth Third and Plaintiffs, communications between BNYM and Plaintiffs or any other person, communications between Fifth Third and any other person, internal Fifth Third research, memoranda or other communications, drafts, and notes." [Dkt. 128-1 at 2.]

For the reasons described above, the Court overrules Defendant's relevance objection. Defendant at the hearing explained that it had produced responsive documents and withdrew its remaining objections to Request No. 3. [Hr'g at 2:31.] The Court will accordingly order

Defendant to produce all documents responsive to Request No. 3 that have not already been produced.

### b) Request 4

Plaintiffs' Request No. 4 asks for all "documents evidencing or relating to advice given by Fifth Third to Plaintiffs regarding any aspect of their corporate debt structure referenced in paragraphs 15 through 20 of Plaintiffs' Complaint." [Dkt. 128-1 at 2.]

For the reasons explained above, the Court overrules Defendant's relevance and burdensomeness objections. To address Defendant's overbreadth objection, and in accordance with the alterations to which Plaintiffs agreed at the hearing, [Hr'g at 2:40], the Court will limit Request No. 4 to "documents relating to any aspect of the corporate debt structure referenced in paragraphs 15 through 20 of Plaintiffs' Complaint of which Defendant's employees were aware when communicating with Plaintiffs." With that clarification, Defendant's remaining objections to Request 4 are overruled and Defendant is ordered to produce all documents responsive to the Request as modified herein.

### c) Request 5

Plaintiffs' Request No. 5 asks for all "documents relating to Fifth Third's marketing of interest rate swap agreements as a means to hedge variable interest rate risk, including but not limited to all internal Fifth Third research, memoranda or communications regarding use of LIBOR as a hedging mechanism, and all sales or marketing presentation materials or advertisements in the past 10 years." [Dkt. 128-1 at 3.]

As with the previous requests, the Court overrules Defendant's relevance and burdensomeness objections. To address Defendant's overbreadth objection, and based on the alterations to which the parties agreed at the hearing, [Hr'g at 2:53-57], the Court will limit

Request No. 5 to Fifth Third's "non-client-specific, internal and external, research, marketing, educational, and informational materials related to interest rate swap agreements as a means to hedge variable interest rate risk, between January 1, 2004 and December 31, 2011." The Court emphasizes that this request encompasses both materials intended for customers and materials intended for internal education of employees, but does *not* include marketing, educational, or informational materials created **solely** for purposes of communicating information to a customer other than EMS. With that clarification, Defendant's remaining objections to Request 5 are overruled and Defendant is ordered to produce all documents responsive to the Request as modified herein.

### d) Request 6

Plaintiffs' Request No. 6 asks for all "documents relating to Fifth Third's recommendation of LIBOR as a hedging mechanism in connection with the Interest Rate Swaps, including but not limited to all internal Fifth Third research, memoranda or communications relating to use of LIBOR as a hedging mechanism." [Dkt. 128-1 at 3.]

For the reasons described above, the Court overrules Defendant's relevance and burdensomeness objections. To address Defendant's overbreadth objection, and in accordance with the alterations to which the parties agreed at the hearing, [Hr'g at 3:05], the Court will limit Request No. 6 to "documents evidencing information related to the use of LIBOR as a hedging mechanism in connection with interest rate swaps of which Defendant's employees were aware in presenting LIBOR as an option to Plaintiffs as a hedging mechanism in connection with the Interest Rate Swaps." The Court, however, emphasizes that this request does not encompass routine notices regarding interest rate changes. [Hr'g at 3:06.] With that clarification,

Defendant's remaining objections to Request 6 are overruled and Defendant is ordered to produce all documents responsive to the Request as modified herein.

### e) Request 12

Plaintiffs' Request No. 12 seeks all "internal research, memoranda or other communications of Fifth Third relating to the strengths, weaknesses or limitations on the use of LIBOR as a hedging mechanism in connection with interest rate swap transactions." [Dkt. 128-1 at 5.]

For the reasons described above, the Court overrules Defendant's relevance and burdensomeness objections. To address Defendant's overbreadth objection, and in accordance with the alterations to which Plaintiffs agreed at the hearing, [Hr'g at 3:30], the Court will limit Request No. 12 to "non-client-specific, internal and external, research, marketing, educational, and informational materials related to interest rate swap agreements as a means to hedge variable interest rate risk, between January 1, 2004 and December 31, 2011." As with Request No. 5, the Court emphasizes that this request does not include materials created **solely** for purposes of communicating information to a customer other than EMS. With that clarification, Defendant's remaining objections to Request 12 are overruled and Defendant is ordered to produce all documents responsive to the Request as modified herein.

### f) Request 15

Plaintiffs' Request No. 15 seeks all "internal research, memoranda or other communications of Fifth Third, in the past 10 years, relating to: a. The risks associated with interest rate swap transactions; b. Use of LIBOR to hedge variable interest rate risk in connection with interest rate swaps; c. The economic recession referenced in paragraph 39 of Plaintiffs'

Complaint and its impact on interest rate swap transactions; and d. The manipulation of LIBOR referenced in paragraphs 40 and 41 of Plaintiffs' Complaint." [Dkt. 128-1 at 7.]

For the reasons described above, the Court overrules Defendant's relevance and burdensomeness objections. To address Defendant's overbreadth objection, and in accordance with the alterations to which Plaintiffs agreed at the hearing, [Hr'g 3:35], the Court will limit Request No. 15 to "non-client-specific, internal and external, research, marketing, educational, and informational materials, during the period January 1, 2006 through December 31, 2011, relating to the impact of the economic recession referenced in paragraph 39 of Plaintiffs' Complaint on interest rate swap transactions" and "non-client-specific, internal and external, research, marketing, educational, and informational materials, during the period January 1, 2006 through December 31, 2011, relating to the manipulation of LIBOR referenced in paragraphs 40 and 41 of Plaintiffs' Complaint." As with Request 5, the Court emphasizes that this request does not include materials created solely for purposes of communicating information to a customer other than EMS. With that clarification, Defendant's remaining objections to Request 15 are overruled and Defendant is ordered to produce all documents responsive to the Request as modified herein.

### g) Request 16

Plaintiffs' Request No. 16 asks for all "communications between Fifth Third and any other person, in the past 10 years, relating to: a. Use of LIBOR to hedge variable interest rate risk in connection with interest rate swaps; b. The economic recession referenced in Paragraph 39 of Plaintiffs' Complaint and its impact on interest rate swap transactions; and c. The manipulation of LIBOR referenced in paragraph 40 and 41 of Plaintiffs' Complaint." [Dkt. 128-1 at 8.]

As with the previous requests, the Court overrules Defendant's relevance and burdensomeness objections. At the hearing, Plaintiffs withdrew parts (a) and (b) of their Request. [Hr'g at 3:46.] To address Defendant's remaining overbreadth objection, the Court will limit Request No. 16 to "non-client-specific, internal and external, research, marketing, educational, or informational materials between January 1, 2006 and December 31, 2011, relating to the manipulation of LIBOR referenced in paragraph 40 and 41 of Plaintiffs' Complaint." As with Request No. 5, the Court emphasizes that this request does not include materials created **solely** for purposes of communicating information to a customer other than EMS. With that clarification, Defendant's remaining objections to Request 16 are overruled and Defendant is ordered to produce all documents responsive to the Request as modified herein.

### h) Request 19

Plaintiffs' Request No. 19 seeks all "documents evidencing or relating to Fifth Third's decision to terminate its banking relationship with Plaintiffs, including but not limited to all communications between Fifth Third and Plaintiffs, as well as all internal Fifth Third emails, memoranda or other communications." [Dkt. 128-1 at 9.]

At the hearing, Defendant withdrew all objections to this Request except those based on privilege and stated that it continues to prepare a privilege log for documents responsive to this request. [Hr'g at 3:56.] The Court will therefore **DENY** Plaintiffs' motion insofar as it seeks documents responsive to this request, with the understanding that Defendant will continue to produce all responsive, non-privileged documents as quickly as practicable, and without prejudice to Plaintiffs' right to challenge Defendant's assertion of privilege once a proper privilege log has been produced.

### i) Request 45

Plaintiffs' Request No. 45 seeks all "documents identifying, describing or otherwise relating to any complaints, lawsuits, threatened lawsuits, claims, investigations, administrative or other proceedings filed or asserted against Fifth Third, from 2003 to the present, involving allegations relating to interest rate swap transactions." [Dkt. 128-1 at 19.]

For the reasons explained above, the Court overrules Defendant's relevance and burdensomeness objections. To address Defendant's overbreadth objection, and in accordance with the alterations to which Plaintiffs agreed at the hearing, [Hr'g at 4:26], the Court will limit Request No. 45 to "documents **identifying** lawsuits and formal administrative proceedings filed or asserted against Fifth Third, from 2003 to the present, involving allegations relating to interest rate swap transactions." With that clarification, Defendant's remaining objections to Request 45 are overruled and Defendant is ordered to produce all documents responsive to the Request as modified herein.

### E. Plaintiffs' Interrogatory No. 2

Plaintiffs' Interrogatory No. 2 asks Fifth Third to identify "all persons with knowledge relating to the allegations in Plaintiffs' Complaint or otherwise relevant to this matter" and to provide the "substance of the person's anticipated knowledge or expected testimony." [Dkt. 128-2 at 2.] Defendant objected on the grounds that the request was overly broad, was unduly burdensome, was premature, and sought irrelevant information. [*Id.*] Defendant also purported to refer Plaintiffs to other documents in accordance with Fed. R. Civ. P. 33(d). [*Id.*] Finally, Defendant provided a list of names that Plaintiffs contend was incomplete because the list omitted individuals whom Plaintiffs discovered through later depositions were involved in the termination of Fifth Third's relationship with Plaintiffs. [Dkt. 127 at 19-20.] Fifth Third argues

that it "appropriately responded" to Plaintiffs' interrogatory by listing over twenty individuals, and that it cannot be expected to anticipate all names that might be mentioned in depositions of its employees. [Dkt. 134 at 7.]

Defendant at the hearing withdrew the relevance objection, [Hr'g at 4:33-36], and the Court finds that Defendant's reliance on Rule 33(d) is improper: Rule 33(d) allows a party to answer an interrogatory with a reference to business records by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). Fifth Third's response to Plaintiffs' interrogatory contains no specification or description of which documents Plaintiffs should review, [*see* Dkt 128-2 at 2], and thus does not comply with Rule 33(d).

The Court will also overrule Defendant's prematurity objection. Even if Defendant argues that it cannot produce a full list of responsive names at this time, its duty is to answer the interrogatory with the information it presently has and then supplement that response if more information becomes available. *See* Fed. R. Civ. P. 33(b)(3) (requiring party to answer "fully"); Fed. R. Civ. P. 26(e) (requiring supplementation).

The Court, however, will sustain the objections based on burden and vagueness. The interrogatory on its face sweeps in "all persons" with relevant knowledge, and thus asks Fifth Third to undertake an ill-defined and potentially endless search for anyone who may have information related to this case. This is not a proper use of interrogatories. *See, e.g.*, *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997) (criticizing interrogatory that requested "identifications of all knowledgeable persons" with respect to all allegations in complaint). The Court therefore **DENIES** the portion of Plaintiffs' motion asking to compel a further response to this interrogatory.

### F. Plaintiffs' Proposed Deposition

On May 13, 2014, Plaintiffs sent Defendant's counsel a proposed Rule 30(b)(6) notice of Defendant's deposition. [Dkt. 127 at 21.] Defendant objected to the topics in the proposed notice as "overly broad" and "unduly burdensome," leading to Plaintiffs' current request to "compel the 30(b)(6) deposition of Fifth Third in the form EMS proposed." [*Id.*] Defendant resists Plaintiffs' motion to compel on that grounds that 1) it is premature because Plaintiffs have transmitted only a proposed deposition notice, rather than serving an actual notice; and 2) several of the listed topics are overly broad. [Dkt. 134 at 21-22.]

Defendant's first contention is dispositive. Although the Federal Rules of Civil Procedure have no "explicit requirement" that a notice of deposition be served before a party files a motion to compel a deposition, courts routinely impose such a requirement. *See Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-1404-JWL, 2012 WL 359877, at *3 (D. Kan. Feb. 2, 2012); *see also Pegoraro v. Marrero*, 281 F.R.D. 122, 128 (S.D.N.Y. 2012) ("Absent evidence that the witnesses at issue were given reasonable written notices stating the time and place of their depositions . . . the Court has no authority to compel witnesses, including the parties, to attend any depositions which were neither noticed nor for which subpoenas were issued."); *Nuskey v. Lambright*, 251 F.R.D. 3, 12 (D.D.C. 2008) (denying motion to compel when witness did not receive written notice stating time and place of deposition); *Wolk v. Seminole Cnty.*, No. 6:05–cv–1722–Orl–18KRS, 2007 WL 328685, at *1 n. 1 (M.D.Fla. Jan. 31, 2007) ("Because no deposition had been noticed as of the date of filing of the motion, a motion to compel such a deposition is not ripe for consideration.").

Because Plaintiffs in this case have merely proposed noticing Fifth Third's deposition, rather than actually serving the notice, [*see* Dkt. 128-5], the Court will adhere to the above-

described line of authority and will not issue an order to compel Fifth Third's deposition. This aspect of Plaintiffs' motion is therefore **DENIED**. This order, however, shall not prejudice Plaintiffs' right to later depose Fifth Third after service of a proper notice.

### G. Van Slooten's Report

EMS contends that it received an incomplete response to its nonparty request for production from Defendant's expert John Van Slooten. [Dkt. 127 at 4.] At the hearing, the parties debated the scope of the request for documents served on Van Slooten, but Plaintiffs agreed to serve a new request with a more specific identification of the documents they seek. [Hr'g at 5:01.] The Court will accordingly **DENY AS MOOT** Plaintiffs' motion to compel insofar as it relates to Van Slooten's document production, without prejudice to Plaintiffs' right to raise this issue again should Van Slooten's production remain deficient.

### H. Search Terms and Email

Defendant in its brief asserted that it had performed various electronic searches related to Plaintiffs' requests for production and had received a potentially burdensome number of search results. [Dkt. 134 at 15.] The Court will therefore address the discovery of electronically stored information ("ESI") more directly.

Within seven days of the date of this order, Fifth Third shall file a disclosure stating 1) the names of all custodians whose ESI was searched; 2) the scope of the ESI searched for each such individual (e.g., hard drives, email files, Word documents, etc.); 3) the date ranges searched for each custodian; and 4) the specific search terms that were applied to the ESI of each custodian. At that time, Fifth Third shall also state 1) a list of additional custodians to search (by name or other description) in light of the withdrawal of Defendant's objections and the other information required to be produced pursuant to this order; 2) the scope of ESI to search for each

such individuals; 3) proposed date ranges to search for each custodian; and 4) specific additional search terms to apply to each custodian so as to comply with Fifth Third's discovery obligations. Within seven days after the date on which Fifth Third's disclosures are filed, Plaintiffs shall propose 1) a list of additional custodians to search (by name or other description); 2) the scope of ESI to search for each such individual; 3) proposed date ranges to search for each custodian; and 4) specific search terms to apply to each custodian.

Following this exchange, the parties should endeavor to reach agreement regarding the scope of additional electronic discovery. The Court will conduct an in person discovery conference at **11:00 a.m. on December 1, 2014** in Room 257, United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana to address any remaining disagreements.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Compel Discovery. [Dkt. 126.] The parties are directed to comply with the Court's order as set forth above.

Date: 11/03/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Kimberly L. Cohen
HOOVER HULL LLP
kcohen@hooverhull.com

Michael A. Dorelli
HOOVER HULL LLP
mdorelli@hooverhull.com

Michael J. Blinn
HOOVER HULL LLP
mblinn@hooverhull.com

Philip A. Whistler
ICE MILLER LLP
philip.whistler@icemiller.com

Stephen Elliot Reynolds
ICE MILLER LLP
stephen.reynolds@icemiller.com