UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EXECUTIVE MANAGEMENT SERVICES, INC., <br> EMS FLORIDA, INC., <br> D&B VENTURES, LLC, <br> AIR GULF II, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> FIFTH THIRD BANK, <br><br> Defendant. | No. 1:13-cv-00582-WTL-MJD |

**ORDER ON MOTIONS TO COMPEL**

This matter comes before the Court on Fifth Third Bank's ("Defendant") Motions to Compel Production from Somerset CPAs, P.C. [Dkt. 178] and to Compel Plaintiffs and Bose, or, in the Alternative, Motion for Evidentiary Inference [Dkt. 183]. For the following reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** each of Defendant's motions to compel.

**I.  Background**

Plaintiffs Executive Management Services, Inc. (EMS), EMS Florida, Inc. ("EMS Florida"), D&B Ventures, LLC ("D&B"), and Air Golf II, LLC ("Air Golf") (collectively "Plaintiffs") filed this suit against Defendant on April 8, 2013. [Dkt. 1 at 1.] Around January 24, 2006, the EMS Plaintiffs and Defendant entered into an interest rate swap agreement ("Agreement"), which was memorialized on an International Swap Dealers Association Master Agreement form and an accompanying Schedule. [Dkt. 1-2 at 1.] Due to the credit crisis that

1

began in 2008, the Agreement between the EMS Plaintiffs and Defendant was not successful, and Plaintiffs thereafter filed this suit. [Dkt. 1 at 10-11.]

Soon after Plaintiffs filed their Complaint, Defendant filed its Motion for Judgment on the Pleadings [Dkt. 37], which the District Judge granted in part and denied in part [Dkt. 74]. Accordingly, two of the Plaintiffs' four original claims remain: (1) Breach of the Duty of Good Faith and Fair Dealing, which involves the unfolding of the parties' business relationship beginning in 2008 and (2) Breach of Fiduciary Duty, which involves Defendant's communications to Plaintiffs prior to entering into the Agreement in 2006 and until the termination of the parties' business relationship. [*See* Dkt. 1 (Counts III and IV, respectively) and Dkt. 74 (Entry on Defendant's Motion for Judgment on the Pleadings).]

Throughout the course of discovery, it has become apparent to Defendant that, during the period relevant to the remaining claims of this lawsuit, Somerset CPAs, P.C. ("Somerset") served as Plaintiffs' outside accounting firm. [Dkt. 179 at 1.] On March 10, 2015, in order to obtain information relevant to Plaintiff' claims, Defendant served Somerset with a Subpoena and Non-Party Request for Production of Documents. [*Id.*] In response, Somerset objected to producing the requested documents to Defendant for several reasons, including accountant-client privilege, but supplied Plaintiffs with their client file, which consists of 381 electronic folders of 6,357 files, including tax returns, work papers, and correspondence. [Dkt. 195 at 3-4.] Because it has yet to receive any responsive documents and asserts that the accountant-client privilege does not apply, Defendant filed a Motion to Compel Production from Somerset. [Dkt. 179 at 1.]

Additionally, in response to Defendant's September 26, 2013 request for production of documents, Plaintiffs withheld certain relevant communications with the law firm Bose McKinney & Evans, LLP ("Bose") on the basis of attorney-client privilege. [Dkt. 184 at 2.]

While the corresponding privilege log noted some such correspondence, Defendant is not convinced that the entirety of the withheld communications have been logged and asserts that the communications have not been properly withheld. [*Id.*] Thus, on June 3, 2014, Defendant additionally served Bose with a Subpoena and Non-Party Request for Production of Documents, and Bose responded in part by providing Defendant with redacted documents and no accompanying privilege log. [*Id.*] Based on its dissatisfaction with Plaintiffs' and Bose's responses, Defendant sought leave to file a motion to compel, which was granted, and filed its Motion to Compel Plaintiffs and Bose. [*Id.* at 184.] On July 31, 2015, oral argument was held on both of Defendant's pending motions to compel, which motions are now before the Court.

## II.  Legal Standard

Rule 37 permits a party to file a motion to compel an opposing party to make a required disclosure upon "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a). A required disclosure, as broadly defined by Rule 26, includes any information that a party may use to support its claims. Fed. R. Civ. P. 26 (a)(1)(A). "For good cause, the court may order discovery of any matter relevant" to the issues of the case. Fed. R. Civ. P. 26 (b)(1). With regard to requesting discovery from non-parties, Rule 45 of the Federal Rules of Civil Procedure outlines the procedures for serving a third party with a subpoena for testimony or document production. Fed. R. Civ. P. 45. When seeking such evidence from a non-party, the party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Additionally, while the third party may timely object to the requested production, the serving party then "may move the court . . . for an order compelling production or inspection" of the requested materials. Fed. R. Civ. P. 45(d)(2). Ultimately, this Court has "broad discretion in discovery matters, [including when

ruling on a] motion to compel discovery." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001).

### III. Discussion

At oral argument, Defendant confirmed that its present discovery dispute has been narrowed to the following documents since it initially filed its motions to compel: (1) the 6,357 documents that make up Plaintiffs' client file with Somerset, which Somerset previously produced to Plaintiffs' counsel, though Defendant seeks to reserve the right to request additional searches of Somerset's files at a later date; (2) communications between Plaintiffs and Bose that allegedly pertain to the underlying financial transaction and Agreement; and (3) the invoices of Bose, which were produced in a redacted form without an accompanying privilege log.

#### A. Choice of Privilege Law

All of the documents at issue are potentially privileged materials, either through accountant-client privilege or attorney-client privilege. Thus, in order to properly determine whether the documents at issue are discoverable, the Court must first determine which state's privilege laws apply. Defendant asserts that New York state privilege law applies due to the fact that the parties' "Agreement will be governed by and construed in accordance with the laws of the State of New York." [Dkt. 179 at 11-12 (argument); Dkt. 1-2 at 18 (Schedule to the Agreement).] However, Plaintiffs argue that Indiana state privilege law applies, relying primarily on Seventh Circuit law that states that "questions of evidence, including privilege, are generally decided by the law of the forum." [Dkt. 198 at 3 (quoting *Palmer v. Fisher*, 228 F.2d 603, 608 (7th Cir. 1955) *abrogated by Carter Products, Inc. v. Eversharp, Inc.*, 360 F.2d 868 (7th Cir. 1966)).]

When a federal court has jurisdiction over a matter based on the diversity of the parties, Rule 501 of the Federal Rules of Evidence provides that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." In matters where there are factual connections to more than one state, "federal courts apply state choice of law rules to determine which state's privilege law controls." *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *4 (S.D. Ill. Apr. 12, 2011). Specifically, the federal court should apply the choice of law rules of the state in which it sits, and those forum choice of law rules determine which state's privilege laws should be applied. *Id.* (citing to *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006)). In matters where the district court has already employed the forum state's choice of law rules and "determined the substantive law applicable to a claim based on state law, the privilege issues are determined by that same state's law." *United States Sur. Co. v. Stevens Family Ltd. P'ship*, No. 11 C 7480, 2014 WL 902893, at *2 (N.D. Ill. Mar. 7, 2014).

In this matter, when faced with Defendant's Motion for Judgment on the Pleadings, the District Judge first applied Indiana's choice-of-law doctrine that "favors contractual stipulations as to governing law." [Dkt. 74 at 3 (citing *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002).] Accordingly, given that the Schedule to the parties' Agreement explicitly states that such Agreement "will be governed by and construed in accordance with the laws of the State of New York," the District Judge concluded that "this Court will apply New York law." [*Id.* at 4.] Thus, in applying the holding made by the *Stevens* court to this matter, because the Court has already determined that New York law applies to the substantive claims before the Court based on Indiana's choice of law rules, the privilege issues before the Court must likewise be determined by New York law.

The case law relied on by the Plaintiffs to assert that Indiana privilege law should be applied to the present matter is not persuasive. First, the Seventh Circuit case primarily relied on by Plaintiffs, *Palmer*, was issued in 1955, twenty years before the first iteration of the current Rule 501 was enacted.[1] *See* PL 93–595, January 2, 1975, 88 Stat 1926. Plaintiffs do cite to a 1985 case from the Northern District of Indiana, which acknowledged that "*Palmer* . . . has never been overturned or modified on the issue of which state law governs the assertion of privilege," but a thirty-year-old, non-binding case that was not presented with the same issue that is presently before the Court is likewise unpersuasive. [Dkt. 198 at 3 (citing to *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 686 n.3 (N.D. Ind. 1985)).]

Additionally, Plaintiffs cite to *Chin v. Rogoff & Company, P.C.*, a district court case out of the Southern District of New York, which concludes that "a federal court sitting in diversity should apply the conflicts rules of the forum state to state law claims" before using New York choice of law principles to determine that New York privilege law should apply. *See* No. 05 CIV. 8360(NRB), 2008 WL 2073934, at *4 (S.D.N.Y. May 8, 2008). Plaintiffs cite to *Chin* as an example of a district court applying "forum-state privilege law to a privilege dispute" [Dkt. 198 at 4], but, while that was the end result, the actual significance of *Chin* here is that the district court first applied New York's choice of law principles, which in that instance led the court to then apply New York privilege law. Thus, when careful examination is made of the district court's reasoning in *Chin*, the conclusion is the same as the court in *In re Yasmin*—a

---

[1] Prior to 1974, Article V of the Federal Rules of Evidence contained thirteen Rules, nine of which articulated non-constitutional privileges that were to be recognized by the federal courts. Fed. R. Ev. 501 (Committee Notes to the 1974 Enactment). This change was made because the committee believed that "federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason." *Id.* Since 1974, Rule 501 was amended only stylistically in 2011, without intent to change a result in any ruling. *Id.* (Committee Notes on the 2011 Amendment).

6

district court should employ the choice of law rules of the forum state to determine which state's privilege laws should be applied.

In reply, Defendant supplied the Court with two additional cases to support its assertions that New York privilege law should apply, which reply Plaintiffs were given the opportunity to counter at oral argument. [*See* Dkt. 200 at 3-4.] First, Defendant cites to a 2014 Seventh Circuit case, which, according to the Defendant, concludes that "the state law which supplies the decision supplies the privilege law." [*Id.* (citing *Doe v. Archdiocese of Milwaukee*, 772 F.3d 437, 440 (7th Cir. 2014)).] However, as indicated by Plaintiffs at oral argument, the issue in *Doe* was merely whether the court should apply any state's privilege law as compared to federal law; with only one state's law in question, there was no need to decide between the laws of two separate states, as is the need here. Based on the meager presentation by the parties and the Court's own fruitless investigation, it is evident that existing Seventh Circuit law cannot definitively answer the nuanced question before the Court.

More significantly, Defendant then cited to *Stevens* at length to reason that New York privilege law should be applied to the parties' present dispute. [*See* Dkt. 200 at 3-4.] The magistrate judge in *Stevens* was presented with a discovery dispute wherein both attorney-client privilege and the work-product doctrine were being asserted. *United States Sur. Co. v. Stevens Family Ltd. P'ship*, No. 11 C 7480, 2014 WL 902893, at *1 (N.D. Ill. Mar. 7, 2014). Notably, the district judge in *Stevens* had already found that "California law provides the substantive rules of decision between the litigants under the indemnity agreement," which indemnity agreement was the basis of the parties' claims before the court. *Id.* The magistrate judge then reasoned that, because issues of privilege are substantive, when the parties consent to the applications of another state's law, the court must honor that consent "if that law would be chosen under the

7

choice-of-law rules used by the state where the court sits." *Id.* (citing *Bell Microproducts, Inc. v. Relational Funding Corp.*, No. 02 C 329, 2002 WL 31133195, at *4 (N.D. Ill. Sept. 25, 2002)). Thus, because the district judge had already determined that California law would apply to the substantive issues of the case "by applying appropriate choice of law principles," the magistrate judge concluded that California law likewise governed the issues of privilege before the court. *Id.*, at *2.

At oral argument, Plaintiffs asserted that *Stevens* should not be followed because it is unclear what the terms of the indemnity agreement were, as the relevant terms of the indemnity agreement in *Stevens* might have been written more broadly than the terms of the Schedule to the parties' Agreement here. However, a close review of the *Stevens* docket, which is accessible online via PACER, provides that the applicable provision of the indemnity agreement in question reads: "This Agreement shall be governed by and construed in accordance with the laws of the State of California." [*United States Sur. Co. v. Stevens Family Ltd. P'ship*, N.D. Ill., 1:11-cv-07480 Dkt. 1-1 at 6.] Save the substitution of the State of "New York" for the State of "California," the relevant provision in *Stevens* is indistinguishable from the relevant provision presently before the Court. Thus, the Court follows the well-reasoned decision of the *Stevens* court and finds that, because the District Judge has applied Indiana's choice of law rules and concluded that "this Court will apply New York law" [Dkt. 74 at 3-4], it is proper to apply New York privilege law to the parties' present discovery disputes.

### B. Accountant-Client Privilege

With regard to the documents contained in Plaintiffs' client file with Somerset, Plaintiffs have asserted that Indiana's accountant-client privilege protects all of requested documents from the client file, and thus it would be overly burdensome to produce a detailed privilege log with

regard to each of the 6,357 documents contained therein. [Dkt. 198 at 4-7.] In reply, Defendant is adamant that, because New York privilege law applies, there is no accountant-client privilege protecting Plaintiffs' client file in the first place. [Dkt. 200 at 3-4.] At oral argument, Plaintiffs confirmed that the only objection to their production of their client file with Somerset is based on Indiana's accountant-client privilege.

New York law does not recognize an accountant-client privilege. *See, e.g.*, *United States v. Davis*, 132 F.R.D. 12, 16 (S.D.N.Y. 1990) ("there is no accountant-client privilege in this Circuit or in this State"); *Delta Fin. Corp. v. Morrison*, 820 N.Y.S.2d 745, 748 (Sup. Ct. 2006) ("A client's communications with its accountants are not afforded special protections under New York law"). Because the Court has determined that New York privilege law is to be applied, Plaintiffs' client file and its 6,357 documents are subject to complete disclosure, as Plaintiffs confirmed at oral argument that they have no further objections to the production of their client file. Accordingly, the Court **GRANTS** Defendant's Motion to Compel Production from Somerset with regard to Plaintiffs' client file and **ORDERS** Plaintiffs[2] to produce the documents that make up their client file, in their native format, to Defendant.

Finally, Defendant asserts that it only acquiesced to limiting the scope of its request for production to Somerset so long as it retains the right to seek electronically stored information (ESI) searches of Somerset's files in the future. [Dkt. 200 at 4-5.] In response to Defendant's request to compel additional ESI, Somerset argues that the request is improper, as Defendant has not identified any custodians or search terms as of yet. [Dkt. 195 at 11.] At oral argument, Defendant confirmed that, as there have been no formal requests for documents resulting from

---

[2] Although Defendant phrases its motion as one to compel production by third-party Somerset, Somerset has already produced Plaintiffs' client file to Plaintiffs so that they might review the file prior to its production. [Dkt. 195 at 3.] Accordingly, Plaintiffs are in possession of the necessary file, and it is the Plaintiffs who are responsible for producing their client file.

9

additional ESI searches at this time, its request to compel results from such searches is not yet ripe. Accordingly, Defendant's Motion to Compel Production from Somerset with regard to the potential ESI searches is **DENIED** without prejudice to Defendant's right to raise such issues, as necessary, in the future.

### C. At-issue Waiver

It its motion to compel Plaintiffs and Bose, Defendant asserts that Plaintiffs have put the advice they received from their outside counsel Bose at issue in this matter, and therefore the privilege associated with those relevant materials has been waived. [*See* Dkt. 184 at 3-8.] Specifically, Defendant contends that Plaintiffs' assertions that (1) EMS was an "unsophisticated customer" of Defendant's upon entering into the Agreement and (2) EMS "reasonably relied on [Defendant] to advise it regarding all aspects of its corporate debt" have put the advice Plaintiffs received from Bose during the relevant period at issue. [*Id.* at 6.] In response, Plaintiffs attempt to distinguish between "**financial** advice" received from Defendant and "**legal** advice" received from Bose and assert that, because Bose did not specifically advise Plaintiffs with regard to the Agreement at issue, the doctrine of "at issue" waiver does not apply and the communications in question remain privileged. [*See* Dkt. 199 at 5-8 (emphasis in original).]

Attorney-client privilege is the oldest privilege protecting confidential communications known to the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Such privilege "is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). However, because invocation of the attorney-client privilege effectually withholds relevant information, "courts construe [attorney-client] privilege to apply only where necessary to achieve

10

its purpose." *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). When a party seeks to assert its privilege, such party carries the burden of establishing that attorney-client privilege exists. *Id.*

Pursuant to New York law, when a party asserts that attorney-client privilege has been waived, a court's inquiry into the extent that waiver has occurred is fact intensive and "turns on case-by-case considerations of fairness." *Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09 CIV 8083 GBD THK, 2010 WL 4983183, at *4 (S.D.N.Y. Dec. 6, 2010). New York courts have defined 'at issue" waiver as occurring:

> where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a **claim** or defense **of the party asserting the privilege**, and application of the privilege would deprive the adversary of vital information.

*Id.* (emphasis added) (citing to state and federal cases so applying New York state law). The *Leviton* court then reviewed the two circumstances in which courts have found "at issue" waiver to have occurred pursuant to New York law: (1) where "the party has asserted a claim or defense that he intends to prove by use of the privileged materials" and (2) where "the privileged documents are indispensable to a party's claims or defenses." *Id.* Although privileged information may be useful to a defendant, the privileged information is not waived where it "is not critical to defending against the [alleged] claim." *Id.*, at *5. Additionally, a plaintiff's attorney-client privilege cannot be waived by reason of a defendant's "own pleading of an affirmative defense." *Chase Manhattan Bank N.A. v. Drysdale Sec. Corp.*, 587 F. Supp. 57, 59 (S.D.N.Y. 1984); *see also Gardner v. Major Auto. Companies, Inc.*, No. 11 CIV. 1664 FB VMS, 2014 WL 1330961, at *7 (E.D.N.Y. Mar. 31, 2014) ("a party cannot effectively force its adversary to waive its privilege implicitly with a pleading that brought the adversary's knowledge and good faith into issue").

In order to determine whether the materials in question are critical to building a defense against Plaintiffs' claim(s), the Court must first determine what relevant claim(s) remain. In its briefing, Defendant cites only to Plaintiffs' assertions that EMS was an unsophisticated customer upon entering into the Agreement and that EMS "reasonably relied on [Defendant] to advise it regarding all aspects of its corporate debt," both of which pertain only to the circumstances leading up to and during the parties' business relationship pursuant to the Agreement. [Dkt. 184 at 6.] While Defendant contended at oral argument that the unfolding of the parties' business relationship from 2008 through 2011 is relevant to the present waiver issue because of Defendant's assertion that Plaintiffs failed to mitigate their damages, such assertion is an affirmative defense, and *Chase* clearly establishes that "at issue" waiver cannot be founded upon an affirmative defense. Thus, only the period prior to the parties' entrance into the Agreement and during the parties' cordial exercise of the Agreement is relevant to Defendant's claim of "at issue" waiver.

Next, although Defendant cites to Plaintiffs' assertions that EMS "reasonably relied on [Defendant] to advise it regarding all aspects of its corporate debt" and to Plaintiffs' assertion that EMS was an "unsophisticated customer" to support of its waiver argument, those **assertions** are not necessarily relevant to Plaintiffs' remaining **claims**, as required by the doctrine of "at issue" waiver. *See, e.g.*, *Leviton*, at \*4. After the District Judge issued his order granting in part and denying in part Defendant's motion for judgment on the pleadings, only two claims remained: (1) Breach of Duty of Good Faith and Fair Dealing, which involves the unfolding of the parties' business relationship beginning in 2008 and (2) Breach of Fiduciary Duty, which involves Defendant's communications to Plaintiffs prior to entering into the Agreement in 2006 and until the termination of the parties' business relationship. [*See* Dkt. 1 (Counts III and IV,

12

respectively) and Dkt. 74 (Entry on Defendant's Motion for Judgment on the Pleadings).] Because Plaintiffs' Breach of Duty of Good Faith and Fair Dealing claim pertains only to the unfolding of the parties' business relationship, materials relevant to that claim lie outside the temporal scope of Defendant's waiver argument, as narrowed above. Accordingly, the Court need only examine the elements of a breach of fiduciary duty claim under New York law to determine whether the materials at issue are critical to the claim's defense.

Pursuant to New York law, the elements of a claim for breach of fiduciary duty are: "(i) the existence of a fiduciary duty, (ii) a knowing breach of that duty, and (iii) damages resulting therefrom." *Johnson v. Nextel Communs., Inc.*, 660 F.3d 131, 138 (2d Cir. 2011). Although Defendant vehemently asserts that Plaintiffs' reasonable reliance on its advice is "at issue," reasonable reliance is not at all relevant to a claim for breach of fiduciary duty, let alone essential to its defense. [*See* Dkt. 201 at 5-6.] Contrary to a claim for fraud, like fraudulent misrepresentation, where a plaintiff must prove that his reliance on the misrepresentation caused damages, *See Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*, 716 F.3d 296, 299 (2d Cir. 2013), Plaintiffs here need prove only that Defendant had an affirmative duty and that Defendant knowingly breached that duty. In other words, the claim is established by proving what the Defendant *did* affirmatively know and do; third-party advice or Plaintiffs' state of mind is hardly relevant to the claim alleged, let alone essential to its defense. Accordingly, the Court finds that Defendant cannot base its argument of "at issue" waiver upon its defense of Plaintiffs' allegation that EMS relied on the advice of Defendant because the allegation is irrelevant to Plaintiffs' claim for breach of fiduciary duty.

As for the allegation that EMS was an "unsophisticated customer," that assertion *is* relevant to a claim for breach of fiduciary duty under New York law. The basis for Defendant's

motion for judgment on the pleadings with regard to the claim for breach of fiduciary duty lies within the Agreement, which states in relevant part that Defendant was "acting for its own account and is not acting as a fiduciary for, or a financial or investment advisor to [EMS]." [Dkt. 74 at 12.] In his order on Defendant's motion for judgment on the pleadings, the District Judge outlined that "[u]nder New York law, waivers of fiduciary duties are upheld 'when parties, particularly sophisticated business entities, enter into an arm's-length business transaction.'" [*Id.* at 13 (citing to *JP Morgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. De C.V.*, No. 603215/08, 2010 WL 4868142, at *10 (N.Y. Sup. Ct. Mar. 16, 2010).] To reiterate, the first element that Plaintiff must prove to establish a valid claim for breach of fiduciary duty is that a fiduciary relationship existed in the first place, as seen in *Johnson*. While it would appear on the face of the Agreement that Plaintiffs have waived their right to claim that Defendant was acting as its fiduciary, the term is only enforceable if EMS is found to have been a "sophisticated customer." Thus, in order for Plaintiffs to succeed on their claim for breach of fiduciary duty, they must prove that EMS was, at the time, an unsophisticated business entity, and Plaintiffs' assertion that EMS was such an "unsophisticated customer" *is* relevant to Plaintiffs' claim of breach of fiduciary duty.

      However, finding that EMS's corporate sophistication prior to 2008 is relevant to a claim is not equivalent to finding that Plaintiffs' communications with outside counsel are essential to a defense of that claim. While the content of the sought-after communications might aid in illuminating EMS's level of sophistication during the relevant period, the *Leviton* court clearly noted that mere usefulness of the materials requested is not sufficient; the requested materials must be "indispensable" to the defense of Plaintiffs' claim in order for Plaintiffs to have waived their privilege. Fortunately for Defendant, there are numerous potential avenues for evaluating

EMS's level of sophistication without piercing Plaintiffs' attorney-client privilege; the mere fact that during the relevant time period Plaintiffs had access to outside legal counsel in Bose and outside accountants in Somerset or that Plaintiffs had experience in intricate financial dealings might itself aid in the defense against Plaintiffs' claim of lack of sophistication.[3]  *See Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 447 (S.D.N.Y. 2006) (where the parties "were sophisticated parties, represented by experienced corporate counsel, who negotiated a 39–page contract to define their relationship").  Thus, although Plaintiffs' sophistication upon entering into the Agreement with Defendant is relevant to their breach of fiduciary duty claim, the privileged documents requested from Bose are not critical to the defense of Plaintiffs' claim, and Plaintiffs' have not so waived their right to assert their privilege.  Accordingly, Defendant's motion to compel Plaintiffs and Bose with regard to the allegation of "at issue" waiver is **DENIED**.

### D. Third Party Privilege Log

The last issue articulated by Defendant is whether the privilege protecting the Bose communications has been waived due to Bose's failure to provide Defendant with a privilege log, instead providing Defendant with minimally redacted responses.  [Dkt. 184 at 3 ("The failure to provide a privilege log as to these documents should constitute waiver of the privilege").]  In response, Bose asserts that the invoices at issue "were produced in their entirety," and, even though they were redacted, such redaction provides the recipient with "more context than a privilege log."  [Dkt. 197 at 2.]

Rule 26(b)(5)(a) of the Federal Rules of Civil Procedure requires that a party withholding privileged information from production must "describe the nature of the documents,

---

[3] The Court additionally recognizes the relevant factual assertions laid out by Defendant in its Reply in Support of Motion to Compel Plaintiffs and Bose. [Dkt. 201 at 3.] However, the breadth and depth of Plaintiffs' sophistication is not yet before the Court, and the Court's suggestions as to topics or facts that might weigh in favor or against a finding of sophistication should not be interpreted of an endorsement of either potential finding.

communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Additionally, Rule 45 mandates that a person withholding subpoenaed information under a claim that it is privileged must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2). The Rule 26 privilege log requirement is, verbatim, extended to non-parties responding to a subpoena for discovery, and therefore case law discussing a party's responsibility to provide a privilege log pursuant to Rule 26 likewise is applicable to the issue before the Court.

"The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements." *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). It is well-established within the Seventh Circuit that an individual or entity producing the discovery must provide "a privilege log containing the following information **for each document not disclosed**:

> (1) the name and job title or capacity of the author(s)/originator(s);
> (2) the names of all person(s) who received the document or a copy of it and their affiliation (if any) with the producing party;
> (3) a general description of the document by type (e.g., letter, memorandum, report);
> (4) the date of the document; and
> (5) a general description of the subject matter of the document."

*In re Bridgestone/Firestone, Inc., ATX, ATX II*, 129 F. Supp. 2d 1207, 1218-19 (S.D. Ind. 2001). The failure to provide the requesting party with a sufficient and timely privilege log "may result in a waiver of any protection from discovery." *Miller v. City of Plymouth*, No. 2:09-CV-205-JVB-PRC, 2011 WL 1740154, at *4 (N.D. Ind. May 5, 2011). In general, however, "[d]iscovery sanctions may only be imposed where a party displays willfulness, bad faith, or fault." *Am. Nat.*

*Bank & Trust Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 877 (7th Cir. 2005); *see also Muro v. Target Corp.*, 250 F.R.D. 350, 365 (N.D. Ill. 2007) *aff'd*, 580 F.3d 485 (7th Cir. 2009) ("An order that privileged documents be disclosed as a sanction is appropriate, however, only if the party that authored the log has displayed willfulness, bad faith or fault").

Here, Bose concedes that it failed to provide any privilege log, let alone a sufficient and timely one, as required by Rule 45 and *Bridgestone/Firestone*. Although Bose asserts that its production of minimally redacted invoices is the functional equivalent of a privilege log, such a production does not meet the unambiguous requirement that a sufficient and timely privilege log be produced. That being said, the Court does not find Bose's actions to be in bad faith. Therefore, the Court **DENIES** Defendant's motion to compel Plaintiffs and Bose with regard to its assertion that the attorney-client privilege has been waived due to Bose's failure to provide Defendant with a privilege log. However, the Court **GRANTS** Defendant's motion to compel Plaintiffs and Bose with regard to the assertion that Bose failed to provide Defendant with a proper privilege log with regard to the invoices that were produced, and Bose is **ORDERED** to produce an appropriate privilege log.

### IV. Conclusion

For aforementioned reasons, the Court hereby **GRANTS IN PART and DENIES IN PART** Defendant's Motion to Compel Production from Somerset CPAs, P.C. [Dkt. 178], and Plaintiffs are **ORDERED** to produce to Defendant the 6,357 documents of their client file, in their native electronic format, within twenty-one (21) days of the date of this order. Additionally, the Court **GRANTS IN PART and DENIES IN PART** Defendant's Motions to Compel Plaintiffs and Bose, or, in the Alternative, Motion for Evidentiary Inference. [Dkt. 183.] Accordingly, Defendant must, within seven (7) days of the date of this order, notify Bose of the

Case 1:13-cv-00582-WTL-MJD   Document 210   Filed 08/12/15   Page 18 of 18 PageID #: 2361

invoices of which Defendant already has a complete copy. Within seven (7) days of that disclosure, Bose must provide Defendant with a proper privilege log with regard to its redactions to each remaining invoice.

Date:  08/12/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Gregory A. Neibarger
BINGHAM GREENEBAUM DOLL LLP
gneibarger@bgdlegal.com

Vilda Samuel Laurin, III
BOSE MCKINNEY & EVANS, LLP
slaurin@boselaw.com

Michael A. Dorelli
HOOVER HULL TURNER LLP
mdorelli@hooverhullturner.com

Michael J. Blinn
HOOVER HULL TURNER LLP
mblinn@hooverhullturner.com

Robert Jorczak
ICE MILLER
Louie.Jorczak@icemiller.com

Philip A. Whistler
ICE MILLER LLP
philip.whistler@icemiller.com

Stephen Elliot Reynolds
ICE MILLER LLP
stephen.reynolds@icemiller.com