**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| EXECUTIVE MANAGEMENT SERVICES, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Cause No.  1:13-cv-582-WTL-MJD ) |
| FIFTH THIRD BANK, | ) ) |
| Defendant. | ) |

**ENTRY ON PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT**

This cause is before the Court on the Plaintiffs' Motion for Leave to File First Amended

Complaint (Dkt. No. 191).  The motion is fully briefed, and the Court, being duly advised,

**GRANTS IN PART** the motion for the reasons set forth below.

## I.  BACKGROUND

This case arises out of an "interest rate swap" agreement[1] between the Plaintiffs,

Executive Management Services, Inc., EMS Florida, Inc., D&B Ventures, LLC, and Air Golf II,

LLC's (collectively "EMS") and Defendant Fifth Third Bank ("Fifth Third").   EMS alleged the

following facts in the original complaint.

---

[1]An interest rate swap is a mechanism for converting a borrower's variable interest rate to a commercially reasonable effective fixed rate.  The parties entering into the agreement select a hypothetical monetary amount, known as the "notational amount," which is simply used to calculate the parties' obligations to each other.  One party then agrees to pay the other a fixed rate of interest on the notational amount and the other party agrees to pay a floating interest rate derived from an index such as the London Interbank Offered Rate ("LIBOR").  In this case, Fifth Third agreed to pay to EMS a variable LIBOR-based rate and EMS agreed to pay a fixed rate of interest on the notational amount.  Therefore, if the LIBOR rate was greater than the fixed rate, Fifth Third would pay EMS; if the fixed rate was greater, EMS would pay Fifth Third.

EMS is "a commercial cleaning, facility maintenance and management company headquartered in Indianapolis, Indiana." Complaint ¶ 13.  In 2004, Fifth Third assisted EMS with procuring corporate bonds from The Bank of New York Mellon ("BNYM") to finance expansions of EMS's operations and refinance portions of its existing debt.  On September 1, 2004, EMS and BNYM entered into a Trust Indenture that authorized BNYM to issue up to ten million dollars to EMS in corporate bonds.  Fifth Third issued a letter of credit to BNYM as collateral for the corporate bonds.

Unfortunately, the interest rate on the corporate bonds was variable and thus unsuitable for EMS.  Fifth Third, therefore, approached EMS and recommended an interest rate swap agreement whereby EMS's variable rates would be effectively "swapped" for fixed rates.  The swap agreement was to be a mechanism whereby EMS could hedge against interest rate volatility on its corporate debt.  Relying on Fifth Third's advice, in January 2006, the parties entered into an International Swaps and Derivatives Association ("ISDA") agreement.

The parties entered into several swap transactions in varying amounts from January 2006 through April 2008.  For all of these transactions, the LIBOR-based rate closely tracked the fixed rate such that any disparities were *de minimus*.  However, this changed in 2008 when the credit crisis occurred.  The LIBOR plummeted, becoming at times as low as .19% and .25%, causing EMS to pay much more than it expected to pay under the swap agreement.  As a result, EMS paid both the high variable rate on its corporate debt and the fixed rate pursuant to the swap agreement, while receiving only the minimal LIBOR-based rate back from Fifth Third.

EMS began an investigation into the swap agreement and requested certain information from Fifth Third; however, Fifth Third provided incomplete information and refused to meet with EMS.  In February 2011, Fifth Third unilaterally terminated the banking relationship,

including the swap agreement, and charged EMS $577,905 in early termination fees.  EMS was therefore forced to change banks and had to pay the fees in order to secure Fifth Third's release of its collateral.

EMS filed this suit in April 2013.  In the original complaint, EMS asserted four counts against Fifth Third:  (1) a claim for frustration of commercial purpose; (2) a claim for recession or reformation due to mutual mistake; (3) a breach of duty of good faith and fair dealing claim; and (4) a breach of fiduciary duty claim.  The Court granted Fifth Third's motion for judgment on the pleadings as to the frustration of commercial purpose claim (Count I) and the claim for rescission or reformation due to mutual mistake (Count II) and denied it as to the two remaining counts.

EMS now seeks to file an amended complaint to add new factual allegations and legal theories based largely on a document it obtained in discovery.  EMS alleges that the document— a March 2008 internal memo—demonstrates that Fifth Third knew that turmoil in the credit market was causing changes in the correlation between the interest rates relevant to the ISDA agreements that increased the basis risk and resulted in the final ISDA agreement entered into between the parties in April 2008 being an unsuitable arrangement for EMS.   The new counts in the proposed amended complaint—fraud by omission/fraudulent concealment, constructive fraud, negligent misrepresentation, and quantum meruit/unjust enrichment—relate to Fifth Third's alleged knowledge of this fact and its failure to disclose it to EMS.

## II.  DISCUSSION

Because EMS's motion to amend was filed long after the deadline for amending pleadings, the Court must determine whether EMS has demonstrated "good cause" for its failure to comply with the deadline.  *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729, 749 (7th Cir.

2015).  In making this determination, "'the primary consideration . . . is the diligence of the party

seeking amendment.'"  *Id.* (quoting *Alioto v. Town of Lisbon,* 651 F.3d 715, 720 (7th Cir. 2011)).

EMS argues that it has good cause for not seeking leave to amend prior to the deadline

because it did not have a basis for the new claims until reviewed the March 2008 memo, which it

did not obtain until recently due to ongoing discovery disputes between the parties.[2]  Fifth Third

does not expressly argue that EMS has not been diligent in its pursuit of discovery; rather, it

argues that EMS could have asserted the new claims even in the absence of the March 2008

memo because they essentially are based on the same facts that are alleged in the original

complaint.  The Court disagrees.  EMS seeks to assert claims that are based on the specific

knowledge that it asserts is demonstrated by the March 2008 memo.  The factual bases for fraud-

based claims must be specifically pled, and the facts contained in the original complaint do not,

without the additional facts based on March 2008 memo, point to specific information that was

allegedly known by Fifth Third and improperly withheld from EMS.  Indeed, to the extent that

the new claims are supported by the facts alleged in the original complaint, it is not necessary for

EMS to amend its complaint to assert them, because a plaintiff need not plead legal theories in its

complaint.  *See, e.g.*, *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (noting Seventh

Circuit's "strong commitment" to this principle); *Midwest Commerce Banking Co. v. Elkhart

City Ctr.*, 4 F.3d 521, 524 (7th Cir. 1993) ("Rule 9(b) does not require that the complaint explain

the plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other

action or inaction that the plaintiff claims was fraudulent.").

---

[2]EMS argues that Fifth Third improperly concealed the document in question; Fifth Third
vigorously denies that characterization of events.  The Court need not, and therefore does not,
resolve that dispute.

Because EMS has demonstrated good cause for not seeking to amend its complaint prior to the deadline for doing so, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Fifth Third suggests that this liberal standard is not satisfied here because permitting the amendment would be futile and would unduly prejudice it at this stage of the case, when liability and expert discovery has been completed.   While Fifth Third makes several arguments regarding the facts that it believes render EMS's claims untenable, the standard for futility is whether the facts as alleged, if true, state a claim, not whether there are competing facts that would defeat a claim.  With regard to undue prejudice, it is unclear to the Court what additional discovery Fifth Third might need to conduct to address the new claims, especially in light of Fifth Third's own insistence that the document on which they are based relates directly to the allegations already in the Complaint.  However, if Fifth Third identifies such discovery, it may move for leave to conduct it when it files its response to the amended complaint.

### III. <u>CONCLUSION</u>

For the reasons explained above, the Court finds that the Plaintiffs will be permitted to amend their complaint to add the new claims set forth in the proposed amended complaint.  That said, however, the proposed amended complaint improperly includes the two counts that the Court already has dismissed.[3]  Accordingly, the Plaintiffs shall **within 3 days of the date of this Entry** file an amended complaint that is identical in all respects to the proposed amended complaint filed with the instant motion, except that it shall not include claims for frustration of commercial purpose and recession or reformation due to mutual mistake.  In light of this ruling,

---

[3]Perhaps the Plaintiffs believed they had to reassert the claims in order to preserve their right to appeal the dismissal of those claims.  That is not the case.  *Ball v. City of Indianapolis*, 760 F.3d 636, 642 (7th Cir. 2014).

Fifth Third's motion for summary judgment (Dkt. No. 226) is **DENIED** as moot.   Motions for summary judgment relating to the amended complaint shall be filed **within 28 days of the date of the filing of the amended complaint**.  This deadline may be extended if Fifth Third files a motion for leave to conduct additional discovery in light of the amended complaint and demonstrates that the additional discovery is essential to its anticipated motion for summary judgment.

     SO ORDERED: 12/4/15

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic notification